IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANCES DIDOMENICO,

            Plaintiff,

      v.

CAROLYN COLVIN,
Commissioner of Social Security,

            Defendant.

Case No. 3:15-cv-02393-SI

OPINION AND ORDER

Merrill Schneider, SCHNEIDER KERR LAW OFFICES, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 Southwest Third Avenue, Suite 600, Portland, OR 97204; Leisa A. Wolf, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Frances Didomenico ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff protectively filed an application for DIB on July 6, 2012. AR 166-72. Plaintiff alleged an onset date of December 31, 1997. AR 166. Plaintiff's date last insured was March 31, 2007. Plaintiff was born on December 16, 1955, and was 42 years old on the alleged onset date

and 58 years old at the time of the hearing. AR 86. Plaintiff alleged a variety of health problems, including blood clots, depression, problems with her left leg, irritable bowel syndrome, problems with her throat and swallowing, interstitial cystitis, bipolar disorder, and headaches. AR 189.

Plaintiff's application was denied initially and upon reconsideration, and she subsequently requested a hearing before an Administrative Law Judge. AR 99-110. An administrative hearing was held before ALJ Steve Lynch on May 20, 2014. AR 43. On June 10, 2014, ALJ Lynch issued a written decision denying Plaintiff's application. AR 18-33. The Appeals Council denied Plaintiff's subsequent request for review on October 26, 2015, making the ALJ's decision final. AR 1-6. This appeal followed.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential process in his decision issued on June 10, 2014.

AR 18-33. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

from the alleged onset date through the date last insured. AR 20. At step two, the ALJ found that

Plaintiff suffered from "history of electric shock, fractures of lower limbs, interstitial cystitis (IC)

and depression" *Id.* The ALJ considered that the record also contained evidence of "digestive

problems, gastroesophageal reflux disease, dysphagia, right shoulder pain, right hip pain,

osteoporosis and migraines." *Id.* The ALJ, however, held:

> These conditions, considered singly or in combination, have
> caused only transient and mild symptoms and limitations, are well
> controlled with treatment, did not persist for twelve continuous
> months, do not have greater than a minimal limitation on the
> claimant's physical or mental ability to perform basic work
> activities, or are otherwise not adequately supported by the medical
> evidence of record.

AR 21-22. Accordingly, the ALJ ruled that these impairments did not rise to the level of a severe

medical impairment.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or equaled the requirements of a listed impairment. AR 22-23. The ALJ

then determined that Plaintiff had the RFC to perform light work, with additional limitations.

Specifically, the ALJ concluded that Plaintiff

> can stand and walk about four hours a day. She can use a cane for
> ambulation. She must avoid unprotected heights and hazards. She
> can no more than occasionally climb, stoop, crouch, kneel or
> crawl. She is limited to simple, entry-level work. She can have no
> more than occasional interaction with the public and coworkers.

AR 23.

In reaching his RFC conclusions, The ALJ considered the reports of several of Plaintiff's medical providers. The ALJ considered the opinions of Plaintiff's primary care provider, Dr. Sara Becker, Plaintiff's treating neurologist, Dr. Gajanan Nilaver, and examining physician Dr. Terrence Sedgewick. AR 26-28. The ALJ gave little weight to Plaintiff's treating psychologist Joyce Follingstad, PhD, RN, and Plaintiff's treating psychiatrist Dr. James Farley. The ALJ found Dr. Follingstad's opinion was rendered years after Plaintiff's date last insured and Dr. Follingstad appeared to have forgotten some details of Plaintiff's treatment. The ALJ also found that Dr. Follingstad's opinion was based in part on Plaintiff's physical impairments, which are outside Dr. Follingstad's expertise. AR 29-30. The ALJ concluded that Dr. Farley's opinion was contradicted by Plaintiff's work history and her "mostly conservative and routine psychological treatment." AR 30. The ALJ also gave little weight to the opinion of Plaintiff's current primary care provider, Dr. Suzanne Seetharaman. Dr. Seetharaman reviewed Plaintiff's charts from her colleague, Dr. Becker, who was Plaintiff's primary care provider before the date last insured. The ALJ gave little weight to Dr. Seetharaman's opinion because she did not have "contemporaneous treating knowledge" of Plaintiff's condition before the date last insured. AR 29. The ALJ gave some weight to the state agency consultants relating to Plaintiff's physical and psychological issues. AR 30.

At step four, the ALJ determined that Plaintiff could not perform her past relevant work. AR 31. At step five, the ALJ heard testimony from a vocation expert ("VE"), who testified that an individual with like characteristics and impairments of the claimant could perform work existing in significant numbers in the national economy, specifically as a small parts assembler, or sorter. AR 32. Accordingly, the ALJ concluded Plaintiff failed to establish disability at any time between the alleged onset date and the date last insured. AR 33.

## DISCUSSION

### A. Medical Evidence

Plaintiff argues that the ALJ improperly discredited the opinions of Drs. Follingstad, Farley, and Seetharaman. The Commissioner responds that the ALJ properly weighed the medical evidence in light of contradictory evidence.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the

opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

### 1.    Dr. Follingstad's Opinion

The ALJ gave little weight to the opinion of Dr. Follingstad, a register nurse ("RN") who also holds a Ph.D., because her opinion was rendered several years after Plaintiff's date last insured. The ALJ also noted that Dr. Follingstad incorrectly recalled an incident from Plaintiff's treatment history, which the ALJ suggested called into question Dr. Follingstad's ability to opine

on the relevant time period. Finally, the ALJ noted that Dr. Follingstad's opinion included elements of Plaintiff's physical impairments, which the ALJ found to be outside Dr. Follingstad's area of expertise. The ALJ gave more weight to the state agency psychological consultants, who found no severe medically determinable psychological impairments. AR 92. The ALJ also pointed out that in the months following Plaintiff's March 2005 suicide attempt, she reported doing better psychologically and denied suicidal ideation. AR 2007. Plaintiff also reported she was psychologically "doing ok" to Dr. Becker, her primary care provider, during a brief office visit in February 2007. AR 327.

The ALJ explained that Dr. Follingstad's opinion from April 28, 2014 is too far removed from Plaintiff's March 31, 2007 date last insured. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester*, 81 F.3d at 832 (quoting *Smith v. Bowen*, 859 F.2d 1222, 1225 (9th Cir. 1988)). The Ninth Circuit has found it improper to reject medical testimony coming nearly two years after the date last insured where that testimony encompassed the time in question and where when the "insured coverage was in effect, [the doctor] examined [plaintiff] twice; supervised . . . the licensed nurse practitioner who treated [plaintiff]; and approved [the nurse practitioner's] prescription of [plaintiff's] medications." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). Here, Dr. Follingstad's involvement in Plaintiff's care goes well beyond that found in *Taylor*. Dr. Follingstad began treating Plaintiff in 1992 and she saw Plaintiff between 2-23 times per year. AR 1852.[1] The ALJ may not discredit Dr. Follingstad's testimony simply because it was issued after Plaintiff's date last insured.

---

[1] There was a three-year gap from 2001 to 2003 where Plaintiff did not see Dr. Follingstad. Notwithstanding this gap, Dr. Follingstad's treatment of Plaintiff remains extensive.

The ALJ also suggested that Dr. Follingstad's testimony was not credible because she incorrectly recalled some details of Plaintiff's treatment, namely stating that Plaintiff had been hospitalized for several days following her suicide attempt when she had in fact been sent home the same day. *Compare* AR 1853 *with* 1953. Although the ALJ correctly noted the inconsistency, it is not proper to discount a treating psychologist of more than 20 years for such a minor inconsistency in recalling Plaintiff's history. *Cf. Haulot v. Astrue,* 290 F. App'x. 53 (9th Cir. 2008) (finding that in the context of evaluating Plaintiff's credibility "[a]ny minor discrepancies in [plaintiff's] testimony were not enough to establish clear and convincing evidence that he is incredible"). Dr. Follingstad recalled Plaintiff's hospitalization and follow up counseling; she merely inaccurately described the length of Plaintiff's hospitalization.

The ALJ also determined that much of Dr. Follingstad's testimony related to Plaintiff's physical impairments, which the ALJ believed fell outside of Dr. Follingstad's area of expertise. Although Dr. Follingstad does opine on Plaintiff's physical impairments in a section of her opinion labelled "symptomology," the majority of her opinion relates to Plaintiff's psychological impairments. AR 1852. It was error for the ALJ to reject Dr. Follingstad's opinions relating to Plaintiff's psychological condition.

The ALJ also did not explain how Dr. Follingstad's experience and education as an RN did not render her an "other medical source," whose opinions on Plaintiff's physical condition may be used in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d).

### 2. Dr. Farley's Opinion

The ALJ gave little credit to the opinion of Dr. Farley because it was inconsistent with Plaintiff's work history and her treatment history. AR 30. The ALJ noted that Plaintiff's work history included "nearly substantial gainful activity" in 1998. *Id.*

In 1998, Plaintiff did reception work for one of her doctors who knew that she was in need of work. AR 51. The ALJ noted that this work was nearly substantial gainful activity. Plaintiff, however, indicated that she was ultimately released from her position due to problems with her depression. *Id.* It is difficult to see how Plaintiff losing her only job that approached substantial gainful activity due to her depression is inconsistent with Dr. Farley's opinion that Plaintiff would struggle in the workplace with "going negative." AR 1850. Furthermore, Plaintiff's one year of "nearly" substantial work in the ten-year period of alleged disability does not provide a legitimate reason to discount Dr. Farley's opinion. *See Lester*, 81 F.3d at 833 ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability.").

The ALJ also found that Dr. Farley's evaluation was inconsistent with Plaintiff's treatment history. The ALJ found that Plaintiff's psychological treatment history was "mostly conservative and routine." AR 30. Dr. Farley prescribed Plaintiff with "medication and supportive psychotherapy." AR 1848. Without providing what more aggressive treatment options the ALJ would expect Dr. Farley to have prescribed, a general criticism that treatment was conservative and routine is not a specific and legitimate reason to discount Dr. Farley's opinion. *Cf. Lapeirre-Gutt v. Astrue,* 382 F. App'x. 662, 664 (9th Cir. 2010) (finding in the context of plaintiff's credibility that "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist"). The ALJ noted earlier in his decision that Plaintiff "was never psychiatrically hospitalized during the relevant period." AR 28. The ALJ appears to believe that the conditions described by Dr. Farley would have been supported had Plaintiff been hospitalized. Under the circumstances of Plaintiff's mental health condition, however, her lack of hospitalization during the relevant time period is not a specific and

legitimate reason to discredit the testimony of a treating doctor. *See Barker v. Colvin*, No. 4:15-CV-00257-CWD, 2016 WL 5746356, at *12 (D. Idaho Sept. 29, 2016) ("The lack of emergency room treatment or hospitalization is not a specific and legitimate reason to discredit Petitioner's testimony.").

### 3. Dr. Seetharaman's Opinion

The ALJ gave little weight to Dr. Seetharaman's opinion because she did not have any contemporaneous knowledge of Plaintiff's condition prior to 2011. AR 29. Dr. Seetharaman, Plaintiff's primary care provider beginning in 2011, completed a questionnaire addressed to Dr. Becker. Dr. Becker was Plaintiff's previous primary care provider and a colleague of Dr. Seetharaman. Dr. Becker could not complete the questionnaire because he was on vacation. AR 241, 2023.

A lack of contemporaneous knowledge, without contradictory evidence, is not a specific and legitimate reason to reject a reviewing physician's testimony. *See Holohan,* 246 F.3d at 1207 (9th Cir. 2001). In *Holohan*, the Ninth Circuit found that a lack of firsthand knowledge was not sufficient to discredit the testimony of the plaintiff's current primary care provider. In that case, the ALJ determined that other examining and reviewing physicians contradicted the primary care provider's opinion and gave more weight to those opinions. The Ninth Circuit found that

> these opinions—of an examining physician who examined Holohan only once and a reviewing physician who merely checked boxes without giving supporting explanations—are insufficient to outweigh the opinion of a treating physician who cared for Holohan over a period of time and who provided an opinion supported by explanation and treatment records.

*Id.*

Here, the ALJ's only stated reason for giving little weight to Dr. Seetharaman's opinion was that she lacked contemporaneous knowledge of Plaintiff's condition before 2011. Although

the state agency consultants contradict Dr. Seetharaman's opinion, the ALJ may not credit the

state agency consultants over Dr. Seetharaman without providing a specific and legitimate

reason. Dr. Seetharaman's lack of contemporaneous knowledge, by itself, is not a specific and

legitimate reason.

## B.  Severe Impairments

Plaintiff argues that the ALJ improperly rejected a conclusion of severe impairments at

step two of the analysis. The Ninth Circuit has explained:

> An impairment or combination of impairments may be found "not
> severe *only if* the evidence establishes a slight abnormality that has
> no more than a minimal effect on an individual's ability to work."
> *Smolen,* 80 F.3d at 1290 (internal quotation marks omitted)
> (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th
> Cir.1988). The Commissioner has stated that "[i]f an adjudicator is
> unable to determine clearly the effect of an impairment or
> combination of impairments on the individual's ability to do basic
> work activities, the sequential evaluation should not end with the
> not severe evaluation step." S.S.R. No. 85–28 (1985). Step two,
> then, is "a de minimis screening device [used] to dispose of
> groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find
> that a claimant lacks a medically severe impairment or
> combination of impairments only when his conclusion is "clearly
> established by medical evidence." S.S.R. 85–28.

*Webb v. Barnhart,* 433 F.3d 683, 686-87 (9th Cir. 2005).

Although this step is intended as a "*de minimis* screening," an ALJ's determination that a

medical impairment is not severe will be upheld if supported by substantial evidence. *Glasgow v.

Astrue,* 360 F. App'x. 836, 837 (9th Cir. 2009). Plaintiff claims that the ALJ did not properly

consider her bipolar disorder, post-traumatic stress disorder ("PTSD"), bleeding disorder,

pulmonary embolus, irritable bowel syndrome (IBS), gastroesophageal reflux disease ("GERD"),

hip pain, arthritis, headaches, and osteoporosis. Although there is evidence in the record

diagnosing Plaintiff with these impairments, "[a] diagnosis . . . alone cannot satisfy the step two

inquiry. [Plaintiff] must show also show [*sic*] her medically discernable impairments are severe."

*Peterson v. Barnhart,* 213 F. App'x 600, 604 (9th Cir. 2006). The ALJ did specifically consider Plaintiff's digestive problems, osteoporosis, hip pain, and headaches. AR 20-21. The ALJ concluded that these conditions "do not have greater than a minimal limitation on the claimant's physical or mental ability to perform basic work activities." AR 21.

### 1. Digestive Issues

The ALJ considered Plaintiff's digestive issues, including GERD and IBS, and found that Plaintiff's symptoms were very well controlled with Prilosec and that the objective evidence in the record did not indicate any severe impairments. AR 21, 436. Although there was some concern about Plaintiff's abdominal bloating, diarrhea, and constipation, a later colonoscopy did not reveal anything beyond a "[s]omewhat tender abdomen" that the doctor believed was likely "musculoskeletal pain more than anything else." AR 1731. Furthermore, as the ALJ noted, Plaintiff apparently responded quite well to treatment. AR 435; *see also Taylor v. Astrue,* 386 F. App'x 629, 631-32 (9th Cir. 2010) (upholding an ALJ finding that plaintiff's mental impairments were not severe because they responded well to treatment). Although Plaintiff was diagnosed with a variety of digestive issues, there is substantial evidence in the record supporting the ALJ's conclusion that these diagnoses did not reveal any severe medically discernable impairment.

### 2. Osteoprosis

The ALJ acknowledged that Plaintiff was diagnosed with osteoporosis but found that Plaintiff's bone density was generally normal and responded well to treatment. AR 21. In 2004 Plaintiff had "[n]ormal bone density values" and Plaintiff's treating doctor noted that Plaintiff was responding to estrogen treatment, no longer needed a vitamin D prescription, and "will not need another bone density for at least 5-10 years." AR 387, 438. Substantial evidence in the record supports the ALJ's conclusion that Plaintiff's osteoporosis was not a severe medical impairment.

PAGE 14 – OPINION AND ORDER

### 3. Hip Pain

Although the ALJ also mentioned Plaintiff's hip pain, the ALJ did not provide clear reasons for why this this condition was not a severe impairment. The ALJ noted that Plaintiff had been diagnosed with a bursitis of the right hip, had a "suspected trochanteric bursitis" and that Plaintiff had an injection in 2007. AR 21, 314, 334. Additionally, Dr. Seetharaman specifically noted Plaintiff's hip problem as the reason Plaintiff would need to be allowed to change positions at her job. AR 2024. Although the ALJ noted that an x-ray of Plaintiff's hip was within normal limits, that single piece of contradictory evidence is not sufficient to prevent Plaintiff's hip pain from passing the step two *de minimis* screening.

The ALJ stated that he considered Plaintiff's nonsevere conditions as part of his "assessment of the claimant's residual functional capacity." AR 22. The ALJ specifically noted Plaintiff's hip injections and physical therapy in determining Plaintiff's RFC, which could suggest that the ALJ's oversight at step two was merely harmless error. *See Lee v. Astrue,* 472 F. App'x 553, 555 (9th Cir. 2012) ("Where an ALJ fails to consider a disorder at Step Two, but nonetheless accounts for that disorder at Step Four in the residual functioning capacity analysis, any alleged error in failing to find the disorder 'severe' at Step Two is harmless."). Given that the ALJ, however, erred when he did not properly weigh Dr. Seetharaman's opinion in determining Plaintiff's RFC, which included specific testimony about Plaintiff's hip pain, the Court cannot conclude that the ALJ's step two determination was harmless error.

### 4. Headaches

The ALJ considered Plaintiff's headaches and noted that although Plaintiff has endorsed cluster headaches, Plaintiff's CT scan was normal and Plaintiff appears to suffer from severe migraines only about twice a year. AR 21, 344, 365, 371. Given the infrequency of Plaintiff's headaches, the ALJ could properly conclude that there was no more than a minimal effect on

PAGE 15 – OPINION AND ORDER

Plaintiff's ability to work. *See Alba v. Colvin,* No. 3:13–cv–05338–KLS, 2014 WL 1805553, at

*3 (W.D. Wash. May 7, 2014) (affirming ALJ conclusion that migraines were not severe where

they occurred "one to two times per year").

### 5.  Arthritis

The ALJ did not provide any reason for not finding Plaintiff's arthritis to be severe. The

ALJ briefly noted Plaintiff's history of arthritis in determining Plaintiff's RFC. AR 26. The ALJ

only pointed to one finding of arthritis and does not appear to have considered the numerous

times Plaintiff's arthritis appears in the record. AR 331, 336, 343, 1869. The ALJ did not give an

explanation for why Plaintiff's arthritis was not severe, and with little more than a passing

mention in subsequent analysis, it was not harmless error for the ALJ not to determine whether

Plaintiff's arthritis was severe. *See Black v. Astrue,* 472 F. App'x 491, 493 (9th Cir. 2012)

(finding that where an ALJ did not provide reasons for disregarding a diagnosis at step two "[w]e

cannot determine whether the error was harmless because the ALJ did not provide a statement of

reasons for rejecting evidence relevant to [plaintiff's] residual functional capacity, and therefore

we do not know whether the ALJ's omission was inconsequential to the ultimate nondisability

determination" (quotation and citation omitted)).

### 6.  Bleeding Disorder

Similarly, the ALJ made no findings regarding Plaintiff's bleeding disorder. AR 247,

362. In the absence of any reason not to find Plaintiff's bleeding disorder severe and without

considering it at a later step, the ALJ erred at step two by not considering whether Plaintiff's

bleeding disorder is a severe impairment.

### 7.  Mental Health Issues

Plaintiff has also been diagnosed with bipolar disorder, PTSD and anxiety. AR 331,

1485, 1847, 1852. The ALJ did not find any of these conditions to be severe and did not provide

a reason at step two for not considering Plaintiff's mental health issues to be severe. In considering Plaintiff's RFC, the ALJ did note that "[t]he medical evidence record reflects the claimant diagnosed with major depressive disorder and bipolar disorder. Regardless of the claimant's exact psychiatric diagnosis, all of her mental health symptoms have been fully considered in this decision." AR 28 (citation omitted). Although it is unclear from the record whether the ALJ included Plaintiff's PTSD and anxiety as part of that consideration, because the ALJ did not properly consider the opinions of Drs. Follingstad and Farley, who opined on Plaintiff's mental health issues, the Court does not find that the ALJ's consideration at a later step created harmless error at step two.

### 8. Pulmonary Embolism

Plaintiff was diagnosed with pulmonary embolism following leg surgery. AR 523, 557. The ALJ did not find Plaintiff's pulmonary embolism to be a severe impairment at step two and did not provide any reasoning for that finding. The ALJ, however, did include Plaintiff's pulmonary embolism in determining Plaintiff's RFC. AR 26. The ALJ recounted Plaintiff's history with pulmonary embolism and ultimately concluded that Plaintiff's pulmonary embolism responded quite well to treatment and that an examining pulmonologist believed Plaintiff's breathlessness could be attributed to unfitness. AR 26, 275, 354. Plaintiff was taken off her treating medication approximately six months after surgery. AR 353. Although it appears that Plaintiff was put back on that medication after another surgery and pulmonary embolism, that surgery occurred in 2009, two years after the date last insured. AR 730-31. The ALJ fully considered Plaintiff's pulmonary embolism in determining Plaintiff's RFC and any error in not finding Plaintiff's pulmonary embolism severe at step two was harmless.

## C.  Plaintiff's Credibility

Plaintiff also challenges the ALJ's reasons for discounting Plaintiff's testimony regarding the severity and limiting effects of her symptoms. The ALJ discounted Plaintiff's claimed limitations because they were: (1) inconsistent with her activities of daily living; (2) inconsistent with her work history; and (3) unsupported by the objective medical evidence.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d

at 883.

### 1. Activities of Daily Living

The ALJ determined that Plaintiff's credibility was impaired by her activities of daily

living. AR 22, 28. Daily activities may be used to discredit a claimant where they either "are

transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina*

*v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ noted that

> [t]he claimant appears to manage her self-care independently. She
> prepares simple meals like salads, pastas and crockpot meals. She
> does laundry, dusts, irons, washes dishes, sweeps floors, rides the
> lawn mower and trims her roses. She shops for groceries once a
> month in stores. She also does some sewing and bird watching.

AR 22. The ALJ also noted that Plaintiff travelled to Europe in 2010, "suggesting robust activity

levels inconsistent with a continuing disability." AR 28. The ALJ erred in finding light

household chores and a single trip abroad taken several years after the relevant time period as

evidence that contradicts Plaintiff's alleged impairments or demonstrates an ability to sustain

activity in a work environment. *Hostrawser v. Astrue*, 364 F. App'x 373, 378 (9th Cir. 2010)

("The fact that [plaintiff] could perform the listed normal activities of daily living and

occasionally travel does not equate to being able to undertake the physical functions that would

be required on a sustained basis in a work setting matching [plaintiff's] skills and background.").

Further, the ALJ did not consider that Plaintiff was hospitalized for a transient ischemic attack[2]

while in Europe after an apparently traumatic episode. AR 676.

---

[2] A transient ischemic attack is a transient stroke that lasts only a few minutes. *See*
http://www.ninds.nih.gov/disorders/tia/tia.htm

### 2. Work History

The ALJ also considered Plaintiff's work history and determined that it "undermines her assertion of total disability." AR 31. In reaching this conclusion, the ALJ considered both Plaintiff's inconsistent work history before her alleged disability onset, as well as the work activity she had after her alleged onset. The ALJ noted that Plaintiff "worked only sporadically" before the alleged onset date and felt that this could indicate that alternative explanations existed for Plaintiff's unemployment. *Id*. A poor work history can be considered as part of evaluating a plaintiff's testimony. *See Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002) (finding that an extremely poor work history, combined with inconsistent activities of daily living and inadequate effort during physical evaluations were sufficiently specific reasons to discredit plaintiff). The mere fact that Plaintiff had a poor work history, however, is not a clear and convincing reason to discount her testimony.

Plaintiff's work history after the alleged onset date was also not a clear and convincing reason to discredit Plaintiff. The ALJ believed that Plaintiff's work after the alleged onset date, which the ALJ found was not at the level of substantial gainful activity, nevertheless indicated that Plaintiff "maintained some ability to work." AR 31. Plaintiff is not required to show that she is incapable of doing any work but only that she has an "inability to engage in any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Although Plaintiff did have limited periods of employment after her alleged onset date, that activity does not provide a basis to reject Plaintiff's symptom testimony.

### 3. Unsupported by the Medical Evidence

The ALJ concluded that the medical record did not support the severity of Plaintiff's physical and mental impairments. AR 31. Regarding Plaintiff's mental health, the ALJ again

noted Plaintiff's "routine and conservative care" and lack of psychiatric hospitalizations. *Id.* The Court has already discussed above why these considerations were improper, and concludes again that Plaintiff's treatment plan, in the absence of an available non-conservative treatment plan, should not be used to discount Plaintiff's testimony.

The ALJ also found Plaintiff's alleged limitations to be counter to the examining neurologist's findings regarding any remaining impairments related to Plaintiff's electrocution as well as Plaintiff's successful recovery from her leg fracture and examination results that indicated full strength and intact sensation. The ALJ, however, did not properly consider the opinion of Dr. Seetharaman who opined on various aspects of Plaintiff's physical impairments, including limitations on her strength. Because the ALJ did not properly consider Dr. Seetharaman's opinion the Court does not find that the ALJ provided a clear and convincing reason to reject Plaintiff's subjective testimony

Further, although an ALJ should consider the objective medical evidence in evaluating a plaintiff's alleged symptoms and limitations, an ALJ may not discount a plaintiff's testimony solely because it is not supported by the objective medical evidence. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), *as amended on reh'g* (Sept. 17, 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); *see also* SSR No. 96–7p ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence."). Because the Court has found the other reasons provided by the ALJ not to be clear and convincing reasons to discount Plaintiff's testimony, even if Plaintiff's alleged symptoms and limitations are unsupported by the objective medical evidence, that alone does not suffice as a clear and convincing reason to discount her testimony.

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next
> review the record as a whole and determine whether it is fully
> developed, is free from conflicts and ambiguities, and all essential
> factual matters have been resolved. In conducting this review, the
> district court must consider whether there are inconsistencies
> between the claimant's testimony and the medical evidence in the
> record, or whether the government has pointed to evidence in the
> record that the ALJ overlooked and explained how that evidence
> casts into serious doubt the claimant's claim to be disabled. Unless
> the district court concludes that further administrative proceedings
> would serve no useful purpose, it may not remand with a direction
> to provide benefits.
>
> If the district court does determine that the record has been fully
> developed and there are no outstanding issues left to be resolved,

the district court must next consider whether the ALJ would be
required to find the claimant disabled on remand if the improperly
discredited evidence were credited as true. Said otherwise, the
district court must consider the testimony or opinion that the ALJ
improperly rejected, in the context of the otherwise undisputed
record, and determine whether the ALJ would necessarily have to
conclude that the claimant were disabled if that testimony or
opinion were deemed true. If so, the district court may exercise its
discretion to remand the case for an award of benefits. A district
court is generally not required to exercise such discretion,
however. District courts retain flexibility in determining the
appropriate remedy and a reviewing court is not required to credit
claimants' allegations regarding the extent of their impairments as
true merely because the ALJ made a legal error in discrediting
their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation

marks omitted).

As discussed in this Opinion and Order, the ALJ erred by failing to provide legally

sufficient reasons, supported by substantial evidence, for disregarding the opinions of

Drs. Follingstad, Farley, and Seetharaman, and for discounting Plaintiff's testimony. The ALJ

did note, however, and the record does support, that there are conflicting opinions regarding

Plaintiff's physical and mental health. Although Drs. Follingstad, Farley, and Seetharaman all

endorsed Plaintiff's mental health impairments, state agency psychological consultants found

Plaintiff's affective disorders to be non-severe. AR 92. Further, while Dr. Seetharaman opined

on various physical limitations Plaintiff faced because of her impairments, state agency

consultants did not find similar limitations. For example, Dr. Seetharaman opined that Plaintiff

could stand and walk for two hours in an eight-hour workday and sit for 3 hours. AR 2024. State

agency consultants, however, found that Plaintiff could stand and walk for six hours in an eight-

hour workday and sit for six hours. AR 94. Although the ALJ did not properly consider all of

Plaintiff's potentially severe impairments, the record remains ambiguous about the severity of

those impairments and the limitations that may arise from them. The Court notes, for instance,

PAGE 24 – OPINION AND ORDER

that while Plaintiff was diagnosed with a bleeding disorder, a 2010 examining physician found it "interesting[]" that plaintiff did not have any major bleeding complications while on anticoagulants. AR 653.

In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ shall appropriately consider the testimony of Drs. Follingstad, Farley, and Seetharaman, reevaluate Plaintiff's severe impairments and credibility, and formulate a new RFC. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for further proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 30th day of November, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge